IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LEVOYD A. JONES, | ) | CASE NO.  3:21-CV-01767-JPC |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE J. PHILIP CALABRESE |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| WARDEN ED SHELDON, | ) | MAGISTRATE JUDGE |
| Allen Correctional Institution | ) | JONATHAN D. GREENBERG |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the

Petition of Levoyd A. Jones  ("Jones" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28

U.S.C. § 2254. Jones is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to

journal entry of sentence in the case *State v. Levoyd Jones,* Lucas County Common Pleas Court Case No.

2008 CR 3575.  For the following reasons, the undersigned recommends that the Petition be **DENIED**. The

undersigned further recommends the Court **DENY** Petitioner's Motion for Discovery as moot.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state

court, factual determinations made by state courts are presumed correct unless rebutted by clear and

convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir.

2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the

facts underlying Jones's conviction as follows:

1

{¶ 8} On October 30, 2008, appellant was indicted on one count of rape of a minor under ten years of age between April 26, 2006, and April 25, 2007, and one count of rape of a minor under ten years of age between February 8, 2007, and February 7, 2008. Appellant was accused of raping his two nieces, who were approximately five years and four years of age at the time of the alleged offenses.

{¶ 9} Appellant moved the trial court for a competency hearing and on June 1, 2009, the trial court held hearings to determine the competency of the two complaining witnesses. Over defense counsel's objection, the trial court found both witnesses competent to testify at trial.

{¶ 10} Trial to a jury began on August 31, 2009. On September 2, 2009, the jury found appellant guilty of both counts as charged. Appellant was sentenced to two consecutive life terms.

{¶ 11}  In support of his first assignment of error, appellant asserts that when the trial court determined that the two young victims in this case were competent to testify at trial it failed to consider the five factors set forth in State v. Frazier (1991), 61 Ohio St.3d 247, 574 N.E.2d 483. Appellant argues that the girls' testimony at the competency hearing demonstrated that they could not recall events from over a year earlier, when the alleged offenses occurred.

{¶ 12}  In determining whether a child under ten is competent to testify, the trial court must take into consideration: "(1) the child's ability to receive accurate impressions of fact or to observe acts those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful." *Frazier, supra, at 251*. (Citations omitted.)

{¶ 13} Additionally, *Evid.R. 601* provides in relevant part: "Every person is competent to be a witness except: (A) * * * children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." It is the duty of the trial judge to conduct a voir dire examination of a child under ten years of age to determine the child's competency to testify. Such a determination of competency is within the sound discretion of the trial judge. *Frazier, supra, at 251*. The trial judge may rely on the child's appearance, the child's general demeanor, his or her manner

2

of responding to questions, and any other indicia of ability to relate the facts accurately and truthfully. Id.

{¶ 14} In the case before us, the victims were six years old ("A.") and eight years old ("T.") at the time of the competency hearing. The judge spoke to each child separately. When asked, T. stated her age, grade in school, the names of her school and her teacher, and the day school would be over for the summer. Additionally, T. knew her birthday and related details of her recent birthday party. She told the judge the names of the people living in her house, as well as the first names of her mother, father and both grandmothers. She also discussed some details from the previous Christmas, about five months before the hearing. When questioned, T. stated that when you tell a lie you get in trouble. T. promised the judge to tell the truth.

{¶ 15} A. stated that she was six years old and told the judge she was in kindergarten. When asked the name of her school, she gave her teacher's name. A. said the alphabet correctly, counted accurately to 25 and spelled her first and last names. She named her siblings, other family members and several school friends. When questioned, A. said she did not know the difference between telling the truth and telling a lie. But she then told the judge that she always tells her mother exactly what happened if her mother asks her, and said she does not ever tell her mother "a story." When asked by the judge if everything she told the judge that day was "right," A. said that it was. In response to questions from the judge about facts that could be discerned in the courtroom, such as the color of the judge's shirt, A. indicated correctly whether the statements were the truth or a lie. She also stated that the judge should tell her the truth and if the judge did not, she would get angry.

{¶ 16} At the conclusion of the hearing, the judge found that T. was very capable of giving an accurate impression of facts, was able to recollect things that had happened to her in the past and knew the difference between truth and falsity. As to A., the judge found that the child appeared to be nervous but gave very clear answers to the questions asked of her. The judge noted that while A. said she did not know the difference between the truth and a lie, she was able to correctly identify statements made by the judge as either true or false. The judge concluded that both children were competent to testify.

\*\*\*

3

{¶ 22} State's witness Randall Schlievert testified that he is a board-certified pediatrician specializing in the areas of child sexual abuse and neglect. The doctor explained the protocol he follows in examining and interviewing a child who may be the victim of sexual abuse. He stated that he interviews a child for purposes of diagnosis and possible treatment. The doctor further testified that the girls' physical exams were completely normal, which he stated was not unusual. Schlievert explained that most sexual abuse evaluations result in normal exams even when there has been penetration. The doctor said the lack of physical signs of abuse can be attributed to a delay between the act of abuse and the disclosure and subsequent exam. Also, with small children, often penetration is not deep enough to reach and injure internal tissue; when tissue is torn, it can heal within a few weeks or months and leave no scarring. The doctor cited studies that have shown that anywhere from 59 to 98 percent of abused children seen days, weeks or months after the act of abuse have normal exam results. In the absence of physical findings, the doctor makes a diagnosis of sexual abuse based on information provided by the child.

*4 {¶ 23} The record in this case reflects that the prosecution did not ask Schlievert for his opinion as to the girls' veracity; at no time did the doctor give his opinion as to the truthfulness of the girls' statements to him. The doctor testified that he performed a physical examination of both girls and spoke to them about what they reported had happened with their uncle. Schlievert clearly testified that his medical examination and interviews were for the purpose of diagnosis and possible treatment—specifically, to determine whether either girl was in need of further psychological treatment and counseling.

{¶ 24} With respect to the issue of coaching as raised by appellant, Schlievert testified that he did not see any behavior or hear anything from either girl that led him to believe they had been coached. The doctor testified that the statements made to him were "either spontaneous or detailed, they were age appropriate."

***

{¶ 38} Appellant asserts that the state failed to prove that he penetrated A.'s anal cavity and that no rational trier of fact could have found that appellant raped A. in violation

4

of R.C. 2907.02 without proof of the essential element
of penetration. R.C. 2907.02 requires "sexual conduct,"
which R.C. 2907.01 defines as "vaginal intercourse
between a male and a female; anal intercourse * * * and,
without privilege to do so, the insertion, however slight, of
any part of the body into the vaginal or anal opening of
another."

{¶ 39} In this case, A. testified that, after telling her to take
her clothes off, appellant "touched" her with his hand and his
"wiener" where she "goes poo-poo." A. further testified that
appellant touched the "outside" and that "it hurt."

*State v. Jones*, 2011-Ohio-2173, 2011 WL 1782081, at **1-3 (Ohio Ct. App. May 6, 2011).

## II.    Procedural History

### A.    Trial Court Proceedings

On October 30, 2008, the Lucas County Grand Jury indicted Jones on two first-degree

felony charges O.R.C. 2907.02(A)(1)(b) & O.R.C. 2907.02 (B) Rape of a Minor under ten years

of age. Jones entered pleas of not guilty.  (Doc. No. 11-1, Ex. 1.)

Through counsel, Jones filed a motion to determine competency of the two child

witnesses and on June 1, 2009, the trial court held a competency hearing and found both child

witnesses competent to testify in the case. (Doc. No. 11-1, Ex. 4.)

The case proceeded to jury trial on August 31, 2009.  On September 9, 2009, the jury

returned its verdict, finding Jones guilty of both charges of Rape of a Minor under ten years of

age.  (Doc. No. 11-1, Ex. 5.)

On September 15, 2009, the state trial court held a sentencing hearing.  The trial court

sentenced Jones to two consecutive life in prison sentences. (Doc. No. 11-1, Ex. 6.)

### B.    Direct Appeal

5

Jones, through new counsel, filed a timely notice of appeal to the Court of Appeals for

Lucas County, Ohio, Sixth Circuit Appellate District.

In his appellate brief, he raised the following assignments of error:

I.  The Alleged Victims Were Incompetent to Testify. The Trial Court Committed Prejudicial Error When It Failed to Consider All of the Frazier Factors at the Competency Hearing and the State Failed to Satisfy its Burden of Establishing the Girls' Competency.

II.  The Trial Court Violated Mr. Jones's Due Process Rights When It Admitted the State's Expert Opinion.

III.  The Jury's Verdicts are Unsupported By the Evidence.

IV.  Mr. Jones's Trial Counsel was Ineffective in Violation of the Sixth Amendment of the Constitution.

V.  The Trial Court Erroneously Sentenced Mr. Jones to Consecutive Sentences Without First Making Statutorily-Required Factual Findings.

(Doc. No. 11-1, Ex. 7.) The State filed a brief in response.  (Doc. No. 11-1, Ex. 8.) On May 6,

2011, the state appellate court affirmed Jones's convictions. (Doc. No. 11-1, Ex. 11.)

On June 16, 2011, through counsel, Jones filed a Notice of Appeal with the

Supreme Court of Ohio. (Doc. No. 11-1, Ex. 12.) In his Memorandum in Support of Jurisdiction,

Jones raised the following Propositions of Law:

I.  Where a medical expert's opinion is based entirely on what an alleged child victim told him, he cannot opine on whether he believe that allege child victim has been "coached" because it is tantamount to the expert improperly opining on the child's veracity.

II   In child sex abuse cases, an alleged victim under 10 years of age must establish that she can accurately, completely, and truthfully recall facts and events from the relevant time period instant to the indictment.

6

(Doc. No. 11-1, Ex. 13.) The State filed a response. (Doc. No. 11-1, Ex. 14.) On October 5, 2011, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac.R. 7.08(B)(4). (Doc. No. 11-1, Ex. 15.)

Jones did not file a petition for certiorari in the United States Supreme Court. His filing deadline to do so expired on January 3, 2012.

## C. Post-Conviction Filings

On April 21, 2010, Jones filed a Motion for New Trial. (Doc. No. 11-1, Ex. 21.) The trial court denied the motion as untimely on May 13, 2010. (Doc. No. 11-1, Ex. 22.) Jones did not timely appeal the ruling.

Jones filed a second Motion for New Trial on April 11, 2012 (Doc. No. 11-1, Ex. 16.), which the trial court denied on August 28, 2012. (Doc. No. 11-1, Ex. 19.) The trial court refiled the opinion in a *nunc pro tunc* order on September 11, 2012. Jones did not timely appeal the ruling. (Doc. No. 11-1, Ex. 20.)

On December 19, 2012, Jones filed a Motion for Leave to file Motion for New Trial. (Doc. No. 11-1, Ex. 23.) The trial court denied the motion on March 5, 2013. (Doc. No. 11-1, Ex. 26.) Jones did not file an appeal to that decision.

On October 6, 2020, Jones filed a Petition to Vacate or Set Aside Judgment of Conviction or Sentence, a Request for Appointment of Counsel, and a Motion for Expert Assistance. (Doc. No. 11-1, Ex. 27-29.) On October 7, 2020, the trial court denied the requests for counsel and for expert assistance. (Doc. No. 11-1, Ex. 31-32.) On December 17, 2020, the trial court also denied the Petition to Vacate or Set Aside Judgement of Conviction because it was untimely, and his claims were barred by *res judicata*. (Doc. No. 11-1, Ex. 33.) On January 9, 2021, Jones filed a notice that he was appealing the trial court's December 17, 2020, denial. (Doc. No. 11-1, Ex. 34.)

On March 4, 2021, Jones filed a Motion to File a Delayed Notice of Appeal. (Doc. No. 11-1, Ex. 35.) The appellate court denied Jones's motion on April 9, 2021. (Doc. No. 11-1, Ex. 38.) Jones filed an appeal and amended appeal from the appellate court's decision with the Ohio Supreme Court on April 30, 2021, and May 5, 2021, respectively. (Doc. No. 11-1, Ex. 39-42.) The Ohio Supreme Court declined jurisdiction on June 22, 2021. (Doc. No. 11-1, Ex. 43.)  Jones did not appeal that determination to the U.S. Supreme Court.

**D.      Federal Habeas Petition**

On September 1, 2021, Jones placed his Petition for Writ of Habeas Corpus in the prison mail system. This court filed the petition on September 13, 2021. (Doc. No. 1) Upon order of the court, Jones filed an amended petition on October 4, 2021, with redactions of personal identifiers and asserted the following grounds for relief:

**GROUND ONE:** Ineffective assistance of Counsel.

> **Supporting Facts:** A) Trial counsel violated the Confrontation Clause when he failed to use evidence to impeach the states witnesses B) Trial counsel violated the Due Process Clause when he failed to present and prepare a proper defense.

**GROUND TWO:** Both convictions are devoid of evidentiary support

> **Supporting Facts:** A) [T.T.'s] testimony created an uncharged act of conduct B) [A.T.'s] testimony was not indicative of penetration.

**GROUND THREE:** Prosecutorial Misconduct

> **Supporting Facts:** A) A conviction was obtained through the use of false testimony the state knew or should have known was false.

**GROUND FOUR:** Due Process of Law was violated

> **Supporting Facts**: The state allowed an incompetent witness to testify.

**GROUND FIVE:**  Dr. Schliviert's testimony violated Jones's Due Process of Law.

8

> **Supporting Facts**:  Dr. Schliviert was allowed to testify that he did not believe that the girls were "coached" into making the allegations.

**GROUND SIX**:  Actual Innocence/Fundamental Miscarriage of Justice.

> **Supporting Facts**:  Jones is actually innocent for count #1 because the testimony described a crime that occurred almost 2 years after the time frame established in the indictment and he is actually innocent of count #2 because the trial testimony described sexual "contact" and evidence outside of the trial record prove that Jones did not penetrate A.T which a rape conviction requires. In order for a miscarriage of justice not to occur, this court must intervene.

(Doc. No. 3)

On February 29, 2022, Warden Ed Sheldon ("Respondent") filed his Return of Writ. (Doc. No. 11.) Jones filed a Traverse on March 24, 2022.  (Doc. No.14.)

On June 27, 2022, Jones filed a Motion for Leave to Conduct Discovery in this case, which Respondent opposed. (Doc. Nos. 18-20.) Because the petition is being denied for all of the following reasons, Jones's Motion for Leave to Conduct Discovery will be denied as moot under separate cover.

### III.    Statute of Limitations

At the outset, Respondent argues that Jones petition is not entitled to review because it is time-barred by the AEDPA statute of limitations. (Doc. No. 11 at 10). Respondent further argues that neither statutory tolling, equitable tolling, or the actual innocence exception can excuse Jones's AEDPA statute of limitations violation. Id. Jones admits his petition is untimely but argues that his actual innocence and the "*Schlup* gateway" should extend the AEDPA expiration date. (Doc. No. 14 at 4.) For the reasons that follow, Jones's petition is time-barred and neither statutory tolling, equitable tolling, or the actual innocence exception can revive his expired petition.

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). Under the AEDPA, a

petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). AEDPA applies a 1-year period of limitation to § 2254 petitions. The date that the 1-year clock begins is the latest of the following:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Here, sections § 2244(d)(1)(B) and (C) do not apply because Jones does not assert a new right recognized by the U.S. Supreme Court and Jones does not allege or establish a constitutionally violative state impeditive that prevented him from filing in State court. Section § 2244(d)(1)(D) also does not apply to Jones's cases because the *factual* predicate of Jones's claims was known at the time of his trial. The crux of Jones's petition is that the medical, investigatory, and social work records of the victims contain inconsistent statements that could have been used to impeach witnesses at trial. However, these records are not new. Jones does not allege that these documents were withheld from him and that he was unaware of their existence at the time of his trial. In fact, Jones's Appellant brief acknowledges that more than one month prior to his trial (on July 17, 2009) the following documents were disclosed to

10

Jones for his use in the case: "The Toledo Hospital Emergency Room Records for A.T. and T.T., CSB interviews of all of Shalleion Jones's Children, the St. Vincent Medical Center Records, and Dr. Shliviert's Reports on A.T. and T.T. to CSB." (Doc. No. 11-1, Ex. 8 at 30). Again, the record shows that Jones's purportedly "new" evidence was not made available to him prior to his trial. In addition to receiving the documents prior to trial, a careful review of Jones's trial transcripts reveals that several witnesses provided testimony regarding the existence of all of these documents at trial and the witnesses were cross examined by Jones counsel. Accordingly, the factual predicate of Jones's claims was known or "could have been discovered through the exercise of due diligence" at the time of Jones's state trial and direct appeal. 28 U.S.C. § 2244(d)(1)(D).

As none of the other sub-sections to § 2244(d)(1) apply, Jones's AEDPA limitations clock began on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." § 2244(d)(1)(A). Jones was sentenced on September 15, 2009 and timely appealed on October 1, 2009. (Doc. No. 11-1, Exs. 6-7.) The state appellate court affirmed his conviction and sentence in a decision that was journalized on May 6, 2011. (Doc. No. 11-1, Ex. 11.) Jones then timely appealed the state appellate court decision to the Ohio Supreme Court. (Doc. No. 11-1, Ex. 12.) On October 5, 2011, the Ohio Supreme Court declined jurisdiction. (Doc. No. 11-1, Ex. 15.) Jones did not file a petition for certiorari with the United States Supreme Court, and his filing deadline expired January 3, 2012 ("90 days after entry of the order denying discretionary rule" Sup. Ct. R. 13.). Accordingly, the Court finds that Jones's conviction and sentence became "final" for purposes of § 2244(d)(1)(A) on January 3, 2012, and, absent tolling, would have expired one year later on January 4, 2013. Jones filed his habeas petition on September 1, 2021, more than 9 years after his AEDPA statute of limitations expired. Thus, his petition is time-barred unless he can establish that he is entitled to statutory tolling, equitable tolling, or the actual innocence exception.

11

### A. Statutory Tolling

The AEDPA tolls the one-year limitations period during the time "'a properly filed application for State postconviction or other collateral review . . . is pending.' § 2244(d)(2)." *Evans v. Chavis*, 546 U.S. 189, 191, 126 S.Ct. 846, 163 L.Ed.2d 684 (2006); *Carey v. Saffold*, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002); *accord Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir. 2003). "The time that an application for state post-conviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law." *Id*.  Only "properly filed" applications for post-conviction relief or collateral review toll the statute of limitations, and "a state post-conviction petition rejected by the state court as untimely is not 'properly filed' within the meaning of § 2244(d)(2)." *Allen v. Siebert*, 552 U.S. 3, 128 S. Ct. 2, 169 L.Ed.2d 329 (2007); *Pace v. DiGuglielmo*, 544 U.S. 408, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) ("time limits, no matter their form, are 'filing' conditions, and a state postconviction petition is therefore not 'properly filed' if it was rejected by the state court as untimely"); *Monroe v. Jackson*, 2009 WL 73905 at *2 (S.D. Ohio Jan. 8, 2009).

Further, a timely filed state post-conviction matter cannot serve to toll a statute of limitations which has already expired before the motion was filed.  *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003). Section 2244(d)(2)'s tolling provision "does not ... 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run.  Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman*, 346 F.3d at 602 (citation omitted).

Outside of his direct appeal, Jones filed five post-conviction motions:

(1) a Motion for New Trial (filed: April 21, 2010; denied: May 13, 2010);

(2) second Motion for New Trial (filed: April 11, 2012; denied: August 28, 2012, *nunc pro tunc*

12

entry September 11, 2012);

(3) Motion for Leave to file Motion for New Trial (filed: December 19, 2012; denied March 5, 2013);

(4) Petition to Vacate or Set Aside Judgment of Conviction or Sentence (filed October 6, 2020; denied December 17, 2020); and

(5) a Motion to File a Delayed Notice of Appeal (filed March 4, 2021; denied April 9, 2021).

(Doc. No. 11-1, Exs.16, 19-43).

Jones's second Motion for New Trial (filed April 11, 2012; denied September 11, 2012) and Motion for Leave to file Motion for New Trial (filed December 2012; denied March 5, 2013) were filed after Jones's AEDPA clock began to run on January 3, 2012. Jones second Motion for New Trial was rejected by the court as untimely. Therefore, Jones's 2012 Motion for New Trial did not toll the statute of limitations because it was not "properly filed" in accordance with § 2244(d)(2). *Allen* , 552 U.S. at 3; *Pace*, 544 U.S. 408; *Monroe*, 2009 WL 73905 at *2.

Assuming, arguendo, that Jones's December 19, 2012, Motion for Leave to File Motion for New Trial tolled the AEDPA clock until the trial court's March 5, 2013, decision, Jones still has exceeded the AEDPA statute of limitations because after the state court denied his Motion for Leave to file Motion for New Trial on March 5, 2013, the record reflects that Jones did not file another post-conviction motion with the state court until October 2020. Thus, the one-year AEDPA clock had long expired prior to his October 2020 filing. (Petition to Vacate or Set Aside Judgement of Conviction or Sentence) and his September 1, 2021, habeas petition.

As noted above, state collateral review proceedings can no longer serve to avoid the statute of limitations bar once the limitations period is expired. *Vroman*, 346 F.3d at 602. *See also Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir.2001) (noting that if a delayed appeal restarted the statute of limitations, the one-year limitations provision of the AEDPA would be

13

meaningless) and *DiCenzi v. Rose*, 452 F.3d 465, 468 (6th Cir.2006) (finding that even a successful motion for delayed appeal did not restart the statute of limitations clock). Accordingly, neither Jones's unsuccessful 2020 Motion for Delayed Appeal or his unsuccessful 2021 Petition to Vacate or Set Aside Judgement restarted the AEDPA statute of limitations clock that had expired years prior. Accordingly, Jones's 1-year AEDPA statute of limitations expired many years prior to his September 1, 2021, habeas petition and is now time-barred.

**B. Equitable Tolling**

Although the Petition herein is untimely, the AEDPA statute of limitations period is also subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010). Equitable tolling "allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010). *See also Hall v. Warden, Lebanon Correctional Institution*, 662 F.3d 745, 749 (6th Cir. 2011). However, the equitable tolling doctrine is granted by courts only "sparingly." *See Robertson*, 624 F.3d at 784. Moreover, "although 'the party asserting statute of limitations as an affirmative defense has the burden of demonstrating that the statute has run,' the petitioner bears the ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir.2011)(quoting *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002)). "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010) (internal quotation marks and citation omitted); *Hall v. Warden*, 662 F.3d 745, 750 (6th Cir. 2011).

14

Jones has not made an argument that he is entitled to equitable tolling. Jones, however, does suggests that he was unaware of the availability of habeas relief prior to receiving a pamphlet with instructions on filing habeas petitions from the public defender's office in July 2020. These facts do not entitle Jones to equitable tolling. The Sixth Circuit has long held that lack of knowledge of the filing deadline is an unpersuasive factor in determining whether to allow equitable tolling. *Martin v. Hurley*, 150 F. App'x 513, 516 (6th Cir. 2005) ("This court has repeatedly held that ignorance of the law alone is not sufficient to warrant equitable tolling.") *Harrison v. I.M.S.,* 56 Fed. Appx. 682, 685 (6th Cir. 2003); ("Petitioner's alleged ignorance of legal matters does not demonstrate a lack of constructive knowledge of the filing deadline."); *Miller v. Carson,* 49 F. App'x. 495, 497 (6th Cir.2002); ("lack of knowledge of the law does not excuse his failure to timely file a habeas corpus petitioner"); *Rose v. Dole,* 945 F.2d 1331, 1335 (6th Cir.1991).

Based on all of the above, the undersigned finds that Jones has not demonstrated his entitlement to equitable tolling. Jones has not provided evidence that he diligently pursued his rights or that some extraordinary circumstance prevented him from timely filing. Further, his lack of knowledge regarding the habeas proceedings does not justify equitable tolling. Accordingly, the undersigned finds equitable tolling is not warranted in this case.

### C. Actual Innocence

In *McQuiggin v. Perkins*, ––– U.S. ––––, 133 S.Ct. 1924, 1928, 185 L.Ed.2d 1019 (2013), the United States Supreme Court held that actual innocence, if proven, may overcome the expiration of AEDPA's one-year statute of limitations. The Court noted that a claim of actual innocence is not a request for equitable tolling but, rather, a request for an equitable exception to § 2244(d)(1). *Id*. at 1931. For the actual innocence exception to apply, a habeas petitioner must show "factual innocence, not mere

legal insufficiency." *Bousley*, 523 U.S. at 623. A petitioner must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *See Schlup*, 513 U.S. at 327. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id*. at 316.

Here, Jones argues that he is entitled to bypass AEDPA's statute of limitations requirements because he is actually innocent and has presented evidence outside the trial record. (Doc. No. 14 at 4). However, Jones has not presented any new evidence with his petition. Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. *See also Jones*, 489 F. Supp. 2d at 807; *Allen*, 2012 WL 3711552, at *7. If new evidence is produced, the new evidence must be "so strong that the court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Allen v. Yunkins*, 366 F.3d 396, 405 (6th Cir. 2004).

As discussed earlier, Jones does not present this court with any new reliable evidence outside of the trial record. The evidence he provides, the victim's medical, investigatory, and social work records were not withheld from him, and Jones knew or should have known of their existence at the time of his trial more than 10 years ago. In fact, Jones's Appellant brief acknowledges that more than one month prior to his trial (on July 17, 2009) the following documents were disclosed to Jones for his use in the case: "The Toledo Hospital Emergency Room Records for A.T. and T.T., CSB interviews of all of Shalleion Jones's Children, the St. Vincent Medical Center Records, and Dr. Shliviert's Reports on A.T. and T.T. to CSB). (Doc. No. 11-1, Ex. 8 at 30). Again, Jones does not show that his "new" evidence was not made available to him at the time of trial. Also, careful review of Jones's trial transcripts reveals that

16

several witnesses provided testimony regarding the existence of all of these documents at trial and each were available for cross-examination. According, the evidence Jones attaches to his petition cannot be considered new for purpose of the actual innocence exception.

Therefore, and for all the reasons set forth above, the Court finds the instant Petition is untimely and Jones is not entitled to either statutory tolling, equitable tolling, or the actual innocence exception. Accordingly, it is recommended the instant Petition be dismissed as time-barred. Out of an abundance of caution, however, the Court will nonetheless proceed to consider the claims set forth in Jones's Petition.

### IV. Exhaustion and Procedural Default

**A.     Legal Standard**

AEDPA also requires that Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b),( c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97S.Ct. 2497, 53 L.Ed.2d 594 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.; see also Maupin v. Smith*, 785F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the

17

procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted. *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731– 32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.") This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under

state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error."  *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v.LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S.722, 749–50,

19

111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  As stated above, conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  *See also Jones v. Bradshaw*, 489 F. Supp.2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 2012 WL 3711552 at * 7 (6th Cir. Aug. 29, 2012).

## B.    Application to Petitioner

Respondent argues that five of Jones's six grounds are procedurally defaulted.  (Doc. No. 11 at 30-63.)  Respondent argues Jones failed to exhaust Grounds One and Two because he did not timely appeal the issues to the Ohio Supreme Court.  Respondent argues that Jones also failed to exhaust Ground Three by not presenting the claim on his direct appeal. With respect to Grounds Four and Five, Respondent contends that both grounds were presented to the state court as state law issues, not federal constitutional violations, and therefore are unexhausted. Respondent argues that Jones is prevented from presenting his unexhausted claims in federal court due to untimeliness and *res judicata,* and that Jones cannot show cause and prejudice or actual innocence to excuse his default of Grounds One through Five and, thus, Jones's first five grounds are procedurally default. Finally, Respondent argues that Jones's Ground Six claim of actual innocence is not cognizable on habeas review as a stand-alone claim. For the reasons that follow, the undersigned agrees that Jones has procedurally defaulted Grounds One through Five and that Ground Six is not cognizable on habeas review.

20

### a.  Ground One and Ground Two

Respondent argues that Jones procedurally defaulted Ground One and Ground Two when he failed to timely appeal both issues to the Ohio Supreme Court. Doc. No. 11 at 31, 38.  In Ground One Jones presents an ineffective assistance of counsel claim. Doc. No. 11-1, Ex. 8. Jones presented an ineffective assistance of counsel argument on direct appeal as his Fourth Assignment of Error. Doc. No. 11-1 at 73-78. Jones presented his claim as a Sixth Amendment violation and cited federal case law in support of his arguments. Id. Respondent acknowledges that Jones presented Ground One to the state appellate court, but argues Jones failed to exhaust the claim when he did not continue to pursue the claim on his appeal to the Ohio Supreme Court. Doc. No. 11 at 68-73. Similarly, Jones's Ground Two insufficiency of the evidence claim was raised on direct appeal as his Third Assignment of Error. Doc. No. 11 at 73-78. The appellate court considered these issues and rejected them on the merits. Doc. No. 11-1, Ex. 11. However, as Respondent points out, Jones failed to continue to pursue these two issues when he continued his direct appeal to the Ohio Supreme Court.

A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  As Jones did not present his claims to the Ohio Supreme Court in his direct appeal, his Ground One and Ground Two claims are now procedurally defaulted because he would be barred from asserting these claims based on the doctrine of *res judicata*. *Curtis v. Warden, Marion Corr. Inst.*, 1:12-CV-260, 2013 WL 5524604 (S.D. Ohio Oct. 4, 2013) *report and recommendation adopted,* 1:12CV260 WOB-KLL, 2014 WL 2048132 (S.D. Ohio May 19, 2014) (finding a claim procedurally defaulted when

petitioner failed to assert the claim on appeal to the Ohio Supreme Court); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) ("a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.' "). The Lucas County Court of Common Pleas enforced the procedural bar on these claims when it declined to the reach the merits of the ineffective assistance of counsel and insufficient evidence claims in Jones's Petition to Vacate or Set Aside Judgment. Doc. 11-1, Ex. 33 a 398 ("This court is unable to consider defendant's petition for post-conviction relief as it was untimely filed and his claims are barred by the doctrine of res judicata.")

Because Jones failed to present ineffective assistance of counsel (Ground One) and insufficient evidence (Ground Two) to the Ohio Supreme Court on his direct appeal, and he is now barred from doing so, Ground One and Ground Two are procedurally barred.

### 1. Cause and Prejudice

Jones can excuse his procedural default if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. A habeas petitioner must "show that some objective factor external to the defense" caused his failure to comply with the state's procedural rule, *Murray*, 477 U.S. at 488. If the petitioner fails to do so, the Court need not consider the prejudice prong.  *Smith v. Murray*, 477 U.S. 527, 533–34, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). Ineffective assistance of counsel claims may serve as "cause" for a procedural default if the claim rises to the level of a constitutional violation. *Martin v. Mitchell*, 280 F.3d 594, 605 (6th Cir.2002).

While the ineffective assistance of counsel can at times provide cause to excuse procedural default, "attorney error cannot constitute cause where the error caused a petitioner to default in a

proceeding in which the petitioner was not constitutionally entitled to counsel, including a discretionary appeal." *Barkley v. Konteh*, 240 F. Supp. 2d 708, 714 (N.D. Ohio Dec. 13, 2002) (citing *Coleman v. Thompson*, 501 U.S. 722, 751-53 (1991)). Here, Jones had no constitutional right to counsel on his discretionary appeal to the Supreme Court of Ohio. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Tolliver v. Sheets*, 594 F.3d 900 (6th Cir. 2010); *Monzo v. Edwards*, 281 F.3d 568, 576-577 (6th Cir. 2002); *Tanner v. Jeffreys*, 516 F. Supp. 2d 909, 916 (N.D. Ohio Oct. 19, 2007). Thus, any purported failure of his appellate attorney in failing to raise certain issues on his appeal to the Supreme Court of Ohio cannot serve as cause to excuse the procedural default.

In addition, in order to excuse a default, the ineffective assistance of counsel claim must not itself be procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 450–51, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) ("[A] procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective assistance claim itself") (emphasis added). *See also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir.2012); *Paluskas v. Bock,* 410 F.Supp.2d 602, 608 (E.D. Mich.2006); *Howard v. Tibbals*, 2014 WL 201481 at * 16 (N.D. Ohio Jan. 17, 2014). Jones cannot rely on ineffective assistance of appellate counsel to excuse his state court procedural defaults because Jones failed to bring or exhaust any ineffective appellate counsel grounds in a Rule 26(B) application.[1] *Terry v. Jackson*, No. 16-4330, 2017 WL 5664915, at *2 (6th Cir. July 17,

---

[1] Jones argues in his traverse that he brought a Rule 26(B) application in state court, but it was rejected as untimely due to the fact that he mistakenly filed the motion in the appellate court, not the trial court. Doc. No. 14 at 16. Jones refers the court to Doc. No. 11-1 at Page ID 744-771 in support of this claim. Ohio App. R. 26(B) provides that a defendant "may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of *appellate counsel*," but the application must be filed "within ninety days from journalization of the appellate judgment" unless good cause is shown for the delay (emphasis added). The Sixth Appellate District rejected Jones's appeal from his judgment of conviction and sentencing on May 6, 2011. Thus, an Ohio App. R. 26(B) motion would have had to be filed within 90 days from that date. It was not. In fact, the record does not reflect that Jones has ever filed Ohio App. R. 26(B) motion. The motion Jones refers to in his Traverse was

2017).  State law will no longer allow him to pursue these claims.  *See id.*  "Because [Jones] is well outside the ninety-day window of Rule 26(B), that claim is itself procedurally defaulted, *see Coleman*, 501 U.S. at 735 n.1, and cannot serve as cause to excuse [his] original procedural default.  *See Carpenter*, 529 U.S. at 453."  *Id.*

In addition, a habeas petitioner must "show that some objective factor external to the defense" caused his failure to comply with the state's procedural rule, *Murray*, 477 U.S. at 488, and if the petitioner fails to do so, the Court need not consider the prejudice prong.  *Smith v. Murray*, 477 U.S. 527, 533–34 (1986). Here Jones argues that he did not raise his ineffective assistance of counsel claim to the Ohio Supreme Court because of the appellate court's comment that it could not view documents (A. and T.'s medical and police reports) that were not in the record. Doc. No. 11-1, 162-63. However, the appellate court did not dismiss Jones's claim solely due to the records issue. The appellate court separately found that trial counsel's decision not to introduce the documents was a matter of trial strategy that the court could not second guess (citing *State v. Robinson*, 2008-Ohio-3498 at ¶ 245). Thus, Jones does not show that some objective factor caused his failure to comply with the state's procedural rule.

Jones cannot rely on ineffective assistance of appellate counsel to excuse his default of Grounds One and Two because of each and all of the following reasons: (a) he had no constitutional right to counsel for his discretionary appeal to the Ohio Supreme Court, (b) his ineffective assistance of appellate counsel claims are themselves procedurally defaulted and cannot be used to demonstrate cause, and (c) Jones failed to demonstrate an objective factor caused his failure to comply with Ohio's procedural rules. *See Monzo v. Edwards*, 281 F.3d 568, 576-577 (6th Cir. 2002).

---

his Motion to Vacate or Set Aside Judgement of Conviction or Sentence filed on October 6, 2020, pursuant to O.R.C. §2953.21, not an Ohio App. R. 26(B) motion. Accordingly, Jones's argument is not well taken.

24

As Jones fails to show cause to excuse his default, the Court need not consider the prejudice prong. *Smith v. Murray*, 477 U.S. at 533–34.

### 2. Actual Innocence

As discussed in detail earlier in this report (Section III, Subsection C), Jones fails to present evidence meeting the actual innocent exception.

For all of the above reasons, the Court finds Jones has failed to excuse his procedural default of Grounds One and Two.

### b. Ground Three

Respondent argues that Jones also procedurally defaulted Ground Three by failing to raise the issue to the Sixth Circuit Court of Appeals on his direct appeal. Doc. No. 11 at 45. In Ground Three Jones makes a claim of prosecutorial misconduct, alleging that the prosecutor used false testimony that "the state knew or should have known was false."[2] Doc. No. 3 at 8. A careful review of the record shows that Jones did not present his claim of prosecutorial misconduct to the state court on his direct appeal and is no barred from doing so. Doc. 11-1, Ex. 8.

Because Jones's prosecutorial misconduct claims are based on the trial record, Ohio law required that he raise these claims on direct appeal. *See Hill v. Mitchell*, 842 F.3d 910, 936 (6th Cir. 2016); *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 751 (6th Cir. 2013). Jones did not raise these

---

[2] It should be noted that Jones also argues that the state "told the Jury on 2 occasions" that the Toledo Hospital Report did not exist. Doc. No. 3-1 at 14. Jones points to two pages of the trial transcript (pgs. 233 and 502) in support of his argument. Id. However, Jones misrepresents the trial testimony. Trial transcript pages 233 and 504 are part of the state's opening and closing arguments, respectively, where the prosecutor discusses the Toledo Hospital Report. However, the prosecutor does not state that a Toledo Hospital Report does not exist as Jones suggests. The prosecutor explicitly states that Shelleion brought the girls to Toledo Hospital. The prosecutor does mention in both the opening and closing arguments that a rape kit was not done at Toledo Hospital because too much time had passed and, instead, Dr. Schlievert conducted an examination. Doc. No. 11-2 at 277, 551. Jones has not proved that this statement is false. The evidence provided demonstrates that no rape kit was done on the victims at Toledo Hospital. Thus, this portion of Jones argument (alleging false statements by prosecutor on Toledo Hospital records) is not supported by the record.

claims on direct appeal with the Ohio Court of Appeals. "Proper exhaustion requires that a petitioner present every claim in the federal petition to each level of the state courts." *Rayner v. Mills*, 685 F.3d 631, 643 (6th Cir. 2012). A habeas petitioner usually must present his claims to both the intermediate state court of appeals and the state supreme court for the claim to be considered exhausted. *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009). Jones's failure to present these claims to the Ohio Court of Appeals left them unexhausted. Further, Jones had no remaining state court avenues for raising these claims because Ohio courts would dismiss any attempt to raise them again as barred by the doctrine of *res judicata*. *See Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006). In fact, an Ohio court imposed the rule when Jones attempted to present a prosecutorial misconduct claim in his December 17, 2020, Petition to Vacate or Set Aide Judgment, finding that his petition was untimely and his claims were barred by *res judicata* . Doc. No. 11-1, Ex. 27, 33. Consequently, Respondent's argument is well-taken. Jones did not properly exhaust and procedurally defaulted his prosecutorial misconduct claim in Ground Three.

### 1. Cause and Prejudice

Jones admits he did not raise the issue of prosecutorial misconduct on his direct appeal. Doc. No. 14 at 35-36. In the petition Jones states that he did not raise Ground Three on direct appeal because he "did not realize it was a violation until recently."[3]

---

[3] Jones also argues that he did not bring the claim because it involved medical examination, police, and social work records (medical, police, social work records) that were not available at trial. Doc. No. 3 at 9. Importantly, Jones does not argue that these documents were withheld from him, only that the records were not put into evidence at trial and, thus, not available for the appellate court's review. Jones appellate brief acknowledges that the records were made available to Jones prior to trial. Doc. 11-1, Ex. 8 At 30 (footnote 6). Moreover, a careful review of the entire record reveals that Jones's documents argument appears to be a post-hoc rationalization because at the time of his appeal he put forth other claims related to the records and would have been unaware appellate court would deny these claims based on unavailability of the records until after the decision came out. Therefore, Jones argument that he did not make the prosecutorial misconduct claim on his direct appeal due to the records issue is problematic because he made other arguments based on those same records.

A habeas petitioner must "show that some *objective factor external to the defense*" caused his failure to comply with the state's procedural rule, *Murray*, 477 U.S. at 488, and if the petitioner fails to do so, the Court need not consider the prejudice prong. *Smith v. Murray*, 477 U.S. 527, 533–34 (1986). Jones argues that he did not raise his prosecutorial misconduct claim (1) because he was unaware of the constitutional violation at the time, and (2) because of the appellate court's comment that it could not view documents that were not in the record.

With regard to Jones's claim that he was unaware of the constitutional violation, that claim does not present cause to excuse his procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) ("ignorance of the law…is insufficient to establish cause to excuse his procedural default."); *Gentry v. Trippett*, 173 F.3d 855 (6th Cir. 1999) (Court determined that petitioner's "lack of knowledge of the claims" does not constitute cause).

Jones does not put forth an ineffective assistance of appellate counsel argument in his Petition or Traverse for failure to bring the prosecutorial misconduct claim on direct appeal. Assuming, arguendo, such an argument were made, it would be unavailing. As the Supreme Court explained:

> It has long been the rule that attorney error is an objective external factor providing cause for excusing a procedural default **only if that error amounted to a deprivation of the constitutional right to counsel.** *See Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). An error amounting to constitutionally ineffective assistance is "imputed to the State" and is therefore external to the prisoner. *Murray*, supra, at 488, 106 S.Ct. 2639. Attorney error that does not violate the Constitution, however, is attributed to the prisoner "under well-settled principles of agency law." Coleman, supra, at 754, 111 S.Ct. 2546
> ***
> Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed. *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *Jones v. Barnes*, 463 U.S. 745, 751–753, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court. *See Smith v. Robbins*, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).

27

*Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017) (emphasis added). Even if Jones made an ineffective assistance of appellate counsel argument for not raising a prosecutorial misconduct claim, which he has not, such a claim would not rise to the level of a constitutional deprivation of his right to counsel on direct appeal. As the Supreme Court explained, the constitution does not require that appellate counsel raise every nonfrivolous argument on appeal. The prosecutorial misconduct claim Jones currently raises is based on the same nucleus of facts related to the victim's treatment and investigate records that underly other arguments Jones put forth unsuccessfully on his direct appeal. For example, on direct appeal in his Fourth Assignment of Error, Jones argued that his trial counsel was ineffective for failing to object to the prosecutor and witnesses based on inconsistent statements in the medical and investigative records related to the rapes. The appellate court found as follows:

> [Jones] argues that trial counsel should have introduced medical records from the girls' exams after they disclosed the abuse as well as case notes from the family's Child Services caseworker's file…[because] those documents would have shown prior inconsistent statements made by both girls. First, we note that trial counsel's decision as to whether or not to offer certain materials into evidence is a matter of trial strategy. A reviewing court must refrain from second-guessing trial strategy decisions. *See State v. Robinson* (2008), 6th Dist. No. L–06–1182, 2008–Ohio–3498, at ¶ 245.[4]

Doc. 11-1, Ex. 11 at 162, 163.

Based on the appellate court findings regarding the medical and investigative records, Jones cannot show that his appellate counsel's failure to put forth a prosecutorial misconduct claim based on the same nucleus of facts was an "error amounting to a deprivation of the constitutional right to counsel." *Edwards*, 529 U.S. at 451.

---

[4] The appellate court went on to state, "Further, the documents to which appellate refers are not in the record before this court and therefore cannot be used to prove ineffective assistance of counsel." Doc. 11-1, Ex. 11 at 163. Further is defined as "in addition to." See e.g., https://www.merriam-webster.com/dictionary/further Thus, the court's finding that counsel's decision on the introduction of medical and investigative evidence was a trial strategy the appellate court should not second guess was a separate and independent justification for dismissing the claim.

Secondly, any ineffective assistance of appellate counsel argument that could be gleaned from Jones's filings would not provide cause for Jones's procedural default because the claim itself has been defaulted. "[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." *Id.* at 453, 120 S.Ct. 1587.  Jones has never presented an ineffective assistance of appellate counsel claim to the state courts and presented to cause to excuse the default of an ineffective assistance of appellate counsel claim. Accordingly, he cannot rely on ineffective assistance of appellate counsel to excuse his default of his ineffective assistance of trial counsel claim. *Edwards*, 529 U.S. at 453. Jones's failure to establish cause to excuse his default eliminates the need to consider prejudice. See Murray, 477 U.S. at 494; *Harris v. Hurley*, 110 F. App'x 597, 600 (6th Cir. 2004).

### 2.  Actual Innocence

As discussed in detail earlier in this report (Section III, Subsection C), Jones fails to present evidence meeting the actual innocent exception.

For all of the above reasons, the Court finds Jones has failed to excuse his procedural default of Ground Three.

### c.  Grounds Four and Five

Respondent argues that Jones has also procedurally defaulted Ground Four and Ground Five because, on his direct appeal, Jones presented these two issues as state law claims, not constitutional violations. In Ground Four Jones claims the trial court violated his Due Process rights when they allowed an "incompetent witness" to testify. Doc. No. 3 at 10. In Ground Five Jones argues that Dr. Schliviert's testimony that he did not believe the witnesses were coached violated Jones's constitutional right to Due Process. Doc. No. 3 at 12.

A "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Fair presentation of a federal constitutional claim requires more than using phrases like "due process." *See Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006)("bare and isolated citation to the Fourteenth and Sixth Amendments insufficient); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)("General allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present' claims that specific constitutional rights were violated.")(citation omitted); *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995)("A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument.").

Ground Four in Jones's Petition alleges a Due Process rights violation based on the court allowing an "incompetent witness to testify." Doc. No. 3 at 10. Jones raised the issue of witness incompetency during his direct appeal in state court as Assignment of Error I. However, his appellate briefs couched his competency claim arguments in terms of an abuse of discretion in violation of *State v. Frazier,* an Ohio case interpreting Ohio R. Evid. 601(A). *State v. Frazier* (1991), 61 Ohio St.3d 247, 250-251. Jones did not fairly present his competency claim to the state court on direct appeal as a federal constitutional violation. In fact, Jones admitted to this fact in his Traverse stating, "Jones never raised [the competency] issue as a constitutional claim on direct appeal." Doc. No. 14 at 41.  Because Jones did not present the issue to the

state court on direct appeal as a federal competency issue, and there is no longer any method for presenting that claim to the Ohio courts, Jones has procedurally defaulted Ground Four. *See Jones v. Warden, Lebanon Corr. Inst*., No. 2:14-CV-1218, 2015 WL 6121972, at *4 (S.D. Ohio Oct. 16, 2015), report and recommendation adopted, No. 2:14-CV-01218, 2015 WL 7829145 (S.D. Ohio Dec. 4, 2015) (similarly finding that a petitioner who addressed his claim as an abuse of discretion in applying the *Frazier* factors, did not present a federal constitutional claim for relief to the state courts).

Likewise, Jones failed to present Ground Five to the state court as a federal constitutional violation. In Ground Five Jones argues that Dr. Schliviert's testimony that he did not believe the witnesses were coached violated Jones's constitutional right to Due Process. Doc. No. 3 at 12. Jones presented a somewhat similar claim in his direct appeal as Assignment of Error II. In his Assignment of Error caption Jones's used the phrase "due process." Doc. 11-1, Ex. 8 at 19 ("The Trial Court Violated Mr. Jones's Due Process Rights When It Admitted the State's Expert Opinion."). The caption aside, Jones does not make any Due Process claims in the text of his petition. Further, Jones does not rely on federal cases or state cases employing federal constitutional analysis. He did not phrase his claims in terms sufficient to allege a constitutional right and did not allege facts well within the mainstream of constitutional law. *Williams,* 460 at  806. As Jones did not present Ground Five to the "state courts as a federal constitutional issue," but "merely as an issue arising under state law," he did not fairly present his constitutional claim to the state courts. *Koontz*, 731 F.2dat 368.

Because Jones's federal due process claims related to Dr. Shliviert's testimony are based on the trial record, Ohio law required that he raise these claims on direct appeal. *See Hill v. Mitchell*, 842 F.3d 910, 936 (6th Cir. 2016); *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 751 (6th Cir. 2013). Jones did not raise these claims on direct appeal as a federal constitutional issue with the Ohio Court of

Appeals. Jones's failure to present federal due process claims to the Ohio Court of Appeals left them unexhausted. Further, Jones had no remaining state court avenues for raising his claims because Ohio courts would dismiss any attempt to raise them again as barred by the doctrine of res judicata. *See Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006). For all of the above reasons, Jones has procedurally defaulted Ground Four and Ground Five.

### 1. Cause and Prejudice

Jones does not argue cause and prejudice to excuse his procedural default of Grounds Four and Five. Instead, Jones seems to argue that because his direct appeal did not address competency as a federal issue than the state court never reviewed the issue and, thus, it can be reviewed in the habeas context. Doc. 14 at 41. However, Jones misapplies and misunderstands the rules for exhaustion and review of habeas petitions. As discussed earlier, federal claims must be presented to state courts prior to habeas review. *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) ("Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.") (internal quotations omitted). Accordingly, Jones cannot seek habeas review where he did not give the State the opportunity to pass upon and correct alleged violations of his federal rights.

### 2. Actual Innocence

As discussed in detail earlier in this report (Section III, Subsection C), Jones fails to present evidence satisfying the actual innocent exception standard.

For all of the above reasons, the Court finds Jones has failed to excuse his procedural default of Grounds Four and Five.

### IV.    Non-cognizability

Respondent contends that Jones's remaining ground, Ground Six, is not cognizable as a stand-alone claim. In Ground Six Jones presents an actual innocence/fundamental miscarriage of justice. Doc. 3 at 13. The Sixth Circuit has repeatedly held that actual innocence does not constitute a free-standing ground for habeas review. *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007); See also *Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir.), reh'g denied (July 1, 2020), cert. denied, 208 L. Ed. 2d 236, 141 S. Ct. 634 (2020); *Thomas v. Perry*, 553 F. App'x 485, 486 (6th Cir. 2014) ("Thomas' freestanding claim of actual innocence based on newly discovered evidence is not cognizable on federal habeas review"); *Sitto v. Lafler*, 279 F. App'x 381, 382 (6th Cir. 2008) ("[W]e continue to adhere to the rule that a free-standing innocence claim is not cognizable for habeas review"); *Wright v. Stegall*, 247 F. App'x 709, 711 (6th Cir. 2007) ("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that petitioner's claim is not entitled to relief under available Supreme Court precedent."); *Hoop v. Jackson*, No. 1:06-cv-603, 2015 WL 6735895, at *22 (S.D. Ohio Nov. 4, 2015) ("Case law in the Sixth Circuit establishes that the Supreme Court of the United States has never recognized a free-standing or substantive actual innocence claim."); *Carter v. Bradshaw*, No. 3:02CV524, 2015 WL 5752139, at *51 (N.D. Ohio Sept. 30, 2015); *Keenan v. Bagley*, No. 1:01 CV 2139, 2012 WL 1424751, at *48 n.28 (N.D. Ohio April 24, 2012); *Johnson v. Kelly*, No. 1:13 CV 1381, 2015 WL 1298711, at *11 (N.D. Ohio March 23, 2015) (adopting report and recommendation).

As the Sixth Circuit has long held that it does not recognize a free-standing actual innocence claim, Jones's Ground Six is non-cognizable and relief should be denied.[5]

## V. Motion for Discovery

On June 27, 2022, Jones filed a Motion for Leave to Conduct Discovery. (Doc. No. 18) Respondent filed a timely opposition the motion (Doc. No. 19), and Jones filed a timely reply (Doc. No. 20). As the undesigned has recommended dismissal of Jones's petition for statute of limitations violations, procedural defaults, and lack of cognizability, the undersigned also recommends that the Court DENY Jones's Motion for Leave to Conduct Discovery as moot. *Malone v. Lindamood,* No. 1:17-CV-251-HSM-SKL, 2018 WL 3421830, at *1 (E.D. Tenn. July 13, 2018) (denying petitioner's motion for discovery as moot because petition time-barred); Prince v. Cook, No. 3:13 CV 01051, 2014 WL 4956455 (N.D. Ohio Sept. 30, 2014) (finding motion for discovery moot after dismissal of the petition); *Smith v. Warden, Toledo Corr. Inst*., No. 3:10CV367, 2011 WL 4345001, at *1 (S.D. Ohio Sept. 15, 2011) (finding discovery motion mooted by denial of petition).[6]

## VI. Summation

Jones's petition should not be granted because Jones has exceeded the AEDPA statute of limitations by several years. Jones also is not entitled to statutory tolling, equitable tolling, or an actual innocence gateway exception. In addition, Jones first five grounds are procedurally

---

[5] Further, the Sixth Circuit also has noted that if it were ever to recognize such a claim the burden on petitioner would be "extraordinarily high" requiring the petition to "go beyond demonstrating doubt about his [or her] guilt" and "affirmatively prove that he [or she] is probably innocent." *Smith*, 962 F.3d at 207 (internal citations omitted). Jones's claims fail to meet the extraordinarily high burden.

[6]

defaulted for the reasons listed above and his sixth ground is non-cognizable on habeas review.

Further, since his petition warrants dismissal, Jones discovery motion should be denied as moot.


### VI.    Conclusion

For all the reasons set forth above, it is recommended that both Jones's Petition be

**DENIED**. It is further recommended that Jones's Motion for Leave to Conduct Discovery be

**DENIED** as moot


Date: October 13, 20222                          _s/ Jonathan Greenberg_
                                                 Jonathan D. Greenberg
                                                 United States Magistrate Judge


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**